IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

DEPARTMENT OF EDUCATION,            )       CIVIL NO. 12-00438 LEK-BMK
STATE OF HAWAI`I,                   )
                                    )
          Plaintiff,                )
                                    )
     vs.                            )
                                    )
PATRICK P., by and through          )
his Parents, GORDEAN L.-W.          )
and THOMAS W.,                      )
                                    )
          Defendants.               )
_____)


**ORDER REVERSING THE HEARINGS
OFFICER'S JULY 6, 2012 DECISION**

          Before the Court is Plaintiff Department of Education,

State of Hawaii's ("DOE" or "Plaintiff") appeal from the

Administrative Hearings Officer's ("Hearings Officer")

July 6, 2012 Findings of Fact, Conclusions of Law and Decision

("Decision"), pursuant to the Individuals with Disabilities

Education Act of 2004 ("IDEA"), 20 U.S.C. § 1400 et seq.  The DOE

filed its opening brief on February 8, 2013.  Defendants

Patrick P. ("Student"), by and through his parents, Gordean L.-W.

and Thomas W. ("Parents") (collectively, "Defendants"), filed

their opposition to Plaintiff's opening brief on March 8, 2013.

The DOE filed its reply brief on March 22, 2013.  This appeal

came on for hearing on May 13, 2013.  Appearing on behalf of

Plaintiff was Kris S. Murakami, Esq., and appearing on behalf of

Defendants was Carl M. Varady, Esq.  After careful consideration

of the parties' briefs, and the arguments of counsel, the
July 6, 2012 Decision is HEREBY REVERSED.

## I.   <u>Factual and Administrative Background</u>

At the time of the Decision, Student was eighteen years
old and, during the 2011-2012 school year, he was in the twelfth
grade at a private school that he had been attending since the
summer of 2004, the summer after his fourth grade year ("the
Private School"). [Decision at 4.]

When he attended public elementary school, Student
received special education and related services in the category
of Specific Learning Disability ("SLD"). During Student's fourth
grade year, a private psychologist ("Private Psychologist #1")
diagnosed Student with Disorder of Reading, commonly known as
Dyslexia, and Disorder of Writing, commonly known as Dysgraphia.
During Student's fifth grade year, another private psychologist
("Private Psychologist #2") diagnosed Student with Attention
Deficit Hyperactivity Disorder ("ADHD"), Predominately
Inattentive Type. [<u>Id.</u> at 4-6.]

"On or about December 2008, the DOE members of
Student's [Individualized Education Program ("IEP")] team
determined that Student no longer qualified for special education
and related services. Student's [IDEA] program and services were
rescinded." [<u>Id.</u> at 6.]

2

On or about February 24, 2010, the DOE and Student's Parents entered into a settlement agreement which, *inter alia*, addressed Student's tuition and related expenses at the Private School for the school years 2008-2009, 2009-2010, and 2010-2011. As part of the settlement agreement, Parents agreed to dismiss their request for a due process hearing and all claims in the request regarding Student's December 2008 eligibility decision. [Id. at 8.]

During Student's twelfth grade year, Private Psychologist #1 conducted a second evaluation of Student at Parents' request. [Id.] Parents informed the DOE of the results of that evaluation and requested that the DOE reevaluate Student. [Id. at 11.] After a November 22, 2011 student support team meeting and two subsequent observations of Student at the Private School, an eligibility meeting was conducted for Student on January 10, 2012. The DOE members of the eligibility team ultimately determined that Student did not meet the eligibility requirements for SLD, and that he was ineligible for special education and related services under Haw. Admin. R. Title 8, Chapter 60.[1]  [Id. at 11-14, 18.]

On or about January 11, 2012, Defendants filed a request for impartial hearing. The Hearings Officer convened a

---

[1] Haw. Admin. R. Chapter 60 sets forth "the State of Hawai`i administrative rules that are equivalent to the IDEA and 34 C.F.R. Part 300." [Decision at 18 n.23.]

due process hearing on May 3 and May 4, 2012.  [Id. at 2-3.]  The Hearings Officer described the issue as "[w]hether Student is eligible for special education and related services under the" IDEA.  [Id. at 3.]  The Hearings Officer ultimately found that "Student should have been found eligible for special education and related services under the category of SLD at the January 10, 2012 eligibility meeting" and that the finding of ineligibility denied Student a Free Appropriate Public Education ("FAPE").  [Id. at 29.]  Further, the Hearings Officer found that Student's placement at the Private School was appropriate and ordered the DOE to reimburse Parents for Student's program and placement at the Private School for his twelfth grade year.  [Id. at 30.]

The DOE filed its Complaint in the instant case on August 3, 2012.  The Complaint states that the DOE seeks review and reversal of the Decision.  [Complaint at ¶ 9.[2]]

## II.  DOE's Opening Brief

In its Opening Brief, the DOE argues that the Hearings Officer erred in finding that Student was eligible for special education and related services under the category of SLD. [Opening Br. at 2.]

---

[2] On September 10, 2012, Defendants filed a Motion to Dismiss the Complaint.  [Dkt. no. 10.]  This Court denied the motion on November 5, 2012, finding that the DOE had sufficiently plead the grounds for its appeal of the Hearings Officer's Decision.  [Dkt. no. 25.]

The DOE argues that the Hearings Officer's Decision is entitled to only minimal deference, as it was not sufficiently "thorough and careful." [Id. at 18 (citing Ashland School Dist. v. Parents of Student R.J., 588 F.3d 1004, 1009 (9th Cir. 2009); Dep't of Educ., State of Hawai`i v. Rachel M. and Brian L. in their capacity as parents and legal guardians of Henry L., Case No. 1:09-cv-00421-JMS-BMK, at 35 (Mar. 31, 2010)).]  The DOE notes that Defendants' only witness was Student's stepfather, who testified that he is not an expert in determining whether a student is eligible for special education and related services. [Id. at 17-18 (citing Administrative Record on Appeal ("ROA"), TR. Vol. I, at 102).]  The DOE states that it, on the other hand, presented three witnesses, two of whom were qualified as expert witnesses: Ms. Wing Hui, Student Services Coordinator ("SSC") for Kapolei High School, was qualified to testify as an expert witness in the areas of special education with a specialization in mild to moderate learning disabilities, as well as in curriculum and instruction; and Ms. Holly Barra was qualified as an expert in the area of school psychology.  Both testified extensively as to the team's process in evaluating Student, and the team's rationale in determining that Student did not qualify for special education and related services under any category of suspected disability.  [Id. at 18-19.]

5

The DOE argues that the Hearings Officer nevertheless relied heavily on the stepfather's testimony in rendering the Decision.  [Id. at 19-20 (citing Record on Appeal ("ROA") 17, at 122-153).]  The DOE notes that the Hearings Officer placed great emphasis on the fact that the DOE members of the eligibility team did not know Student, and that Student's Parents were the only individuals familiar with Student's educational program and needs.  [Id. at 20.]  Thus, the Hearings Officer found that, although it was the SSC's understanding that Student did not exhibit any disability, received no accommodations or modifications, and performed adequately in an upper level English class, in actuality Student was provided with a modified program designed for his unique needs, and many accommodations to address his dyslexia, dysgraphia, and ADHD.  [Id. at 20 (citing ROA 17, at 152).]

The DOE notes that, in this district court's decision in the Henry L. case, the court found that the Hearings Officer's Decision was entitled to only minimal deference, as his decision omitted discussion of considerable factual testimony contradicting his findings.  [Id. at 21 (citing Henry L., Case No. 1:09-cv-00421-JMS-BMK, at 35).]  The DOE argues that this is a similar case: the Hearings Officer disregarded considerable factual testimony and placed great weight on the stepfather's testimony.

The DOE further argues that it properly determined that Student was not eligible to receive special education and related services under the category of SLD or any other area of suspected disability: it submitted ample evidence (that was not rebutted by Defendants) supporting its conclusion, including the testimony of Ms. Hui and Ms. Barra, Private Psychologist #1's assessment and report, and the two observations of Student at the Private School.  [Id. at 22-30.]

The DOE notes that Defendants argue that providing Student with differentiated instruction would enable him to perform within his ability; however, the DOE argues that differentiated instruction could be provided to Student without the need for special education services.  The DOE points to the testimony of Kim Sanders, assistant principal at Kapolei High School, explaining that there are programs available to general education students who need assistance, including remedial instruction.  [Id. at 31 (citing ROA, TR. Vol. II, at 443-445, 450-545 (providing examples of differentiated instruction available at Kapolei High School)).]

In sum, the DOE argues that the uncontroverted evidence in the record clearly shows that Student does not meet the criteria for eligibility for special education and related services under the category of SLD.  For these reasons, the DOE

submits that the Court should reverse the Hearings Officer's
Decision.

## III. **Defendants' Answering Brief**

In their Answering Brief, Defendants first argue that
the Hearings Officer's Decision is entitled to deference because
it carefully considered the documentary and testimonial evidence,
as well as the arguments of the parties, and provided a detailed
analysis of the evidence presented during the hearing.
[Answering Br. at 10 (citing Capistrano Unified Sch. Dist. v.
Wartenberg By and Through Wartenberg, 59 F.3d 884, 891 (9th Cir.
1995)).]

Defendants further argue that the evidentiary record
supports the Hearings Officer's Decision.  Defendants argue that,
to support its finding of ineligibility, the DOE relied solely on
two short observations "by someone lacking expertise to diagnose
or treat dyslexia, in an environment where [Student's]
performance directly resulted from the specialized instruction he
received," and that the Hearings Officer was therefore not wrong
to note the DOE's lack of evidence to support its position.  [Id.
at 12.]  Defendants note that Ms. Hui had never met Student, and
was not a psychologist or an expert in speech and language.  [Id.
at 11.]  Defendants argue that Ms. Hui's observations were brief,
that she was unable to appreciate the circumstances surrounding
Student's performance, and that she was unaware that his

curriculum was individually modified for his needs.  Defendants
argue that the Hearings Officer therefore correctly found that
Ms. Hui's two observations were "not an accurate representation
of Student's performance and behavior in his areas of
difficulty."  [Id. at 12 (quoting Decision at 25).]

Defendants next argue that the Hearings Officer
properly relied upon the testimony of Student's stepfather.
Defendants note that the stepfather holds a Ph.D. in counseling
psychology, that he works as a counseling psychologist, and that
he is familiar with and has administered psychological testing
and assessments.  [Id. at 13 (citing ROA, TR. Vol. I, at 10-12).]
Moreover, Defendants emphasize, the stepfather had years of
experience observing Student's behaviors over time.  [Id. at 13-
14.]  Further, Defendants note that the stepfather testified
extensively about testing performed on Student, the results of
such tests, and the specialized accommodations Student received
at the Private School, and planned to receive once he enrolled in
community college.  [Id. at 15 (citing ROA, TR. Vol. I, at 32-
46).]  Defendants emphasize that the stepfather testified that
the program at the Private School meets Student's needs and
provides the individualized supports necessary to allow Student
to make progress.  Defendants note that stepfather testified that
there is no indication that Kapolei High School would offer the
same methods, and that Student's performance would suffer were he

pulled out of the Private School.  [Id. at 15 (citing ROA, TR.
Vol. I, at 49, 84-86, 91-94).]

Defendants emphasize that the DOE has never disputed
Student's dyslexia, and that there is no evidence that such a
disability can be "cured."  [Id. at 17.]  Defendants argue that
no IEP or transitional plan was offered by the DOE.  [Id. at 19-
20.]  Further, Defendants argue, Ms. Hui offered no evidence to
contradict or discredit the results of the testing by Private
Psychologist #1 or the testimony of the stepfather.  Defendants
note that Ms. Hui testified that she did not dispute that Student
is receiving accommodations in his educational program, and that
she agreed that his progress was made within an educational
setting that provided him specialized instruction in a small
class.  Ms. Hui also stated that some classrooms at Kapolei High
School may have as many as ninety students.  [Id. at 20-21
(citing ROA, TR. Vol. II, at 299-301).]  Defendants further note
that Ms. Hui indicated on the eligibility work sheet that Student
was not making adequate progress in reading, math, or written
expression for his age, and that she acknowledged that some of
his testing scores demonstrated deficits between cognitive
ability and performance.  [Id. at 21 (citing ROA, TR. Vol. II, at
305-08).]  Defendants also note that Ms. Hui's testimony
suggested that she did not fully understand the test scores or
the particular symptoms of ADHD.  [Id. at 21-22.]  Defendants

emphasize that no evidence suggests that the DOE considered
Student's responses to interventions provided by the Private
School when considering his eligibility.  [Id. at 23.]

Defendants further argue that Ms. Barra, a school
psychologist, was not a clinician and cannot make diagnoses.  [Id.
at 23-24 (citing ROA, TR. Vol. II, at 391-93).]  Defendants note
that Ms. Barra did not dispute the test results of Private
Psychologist #1, and admitted that Student's scores may give rise
to a concern that he would need specialized instruction to make
educational progress.  [Id. at 24 (citing ROA, TR. Vol. II, at
403-405).]  Further, Defendants note, Ms. Barra testified that
the eligibility team did not disagree with any of Private
Psychologist #1's recommendations.  [Id. at 25 (citing ROA, TR.
Vol. II, at 408).]  Defendants also note that Kim Sanders
testified that Student could be accommodated at Kapolei High
School, but that that accommodation would not be special
education.  [Id. at 26 (citing ROA, TR. Vol. II, at 470-73).]

Defendants argue that the Hearings Officer's conclusion
that Student was denied a FAPE is supported by the fact that the
DOE used an impermissible measure for determining eligibility.
Specifically, Defendants argue that the DOE used the discrepancy
between Student's academic achievement and IQ as a measure to
determine eligibility.  Defendants argue, however, that the IDEA
requires consideration of a multitude of factors when measuring

eligibility, with particular emphasis on responses to intervention.  [Id. at 29-30 (citing Michael P. v. Dep't of Educ., 656 F.3d 1057 (9th Cir. 2011)).]  Further, Defendants assert that the DOE should have considered the effect of supports on Student's progress.  [Id. at 31.]

Finally, Defendants argue that the DOE had no legal justification for refusing to provide Student with an IEP addressing his individual needs.  Defendants further assert that the Private School is Student's least restrictive environment for meeting his needs.  [Id. at 32-34.]  As such, Defendants argue that they are entitled for reimbursement of tuition at the Private School.  [Id. at 35-36.]

## IV.  DOE's Reply Brief

In its reply brief, the DOE first argues that the Hearings Officer's Decision is entitled to only minimal deference.  [Reply at 5-6 (citing Henry L., Case No. 1:09-cv-00421-JMS-BMK, at 35).]

Second, the DOE argues that it properly determined that Student was ineligible under any category of disability based upon the criteria under the law.  The DOE reiterates the standard for a finding of disability, and argues that it conducted a thorough assessment and concluded that Student did not meet the statutory and regulatory criteria.  In doing so, the DOE reiterates the testimony of Ms. Hui and Ms. Barra, as well as the

process the team went through to make its determination.  [Id. at 7-19.]  The DOE emphasizes that, with the exception of the stepfather, all of the team members found Student ineligible.

Third, the DOE argues that differentiated instruction would be provided to Student without the need for special education services.  The DOE reiterates that there are programs available to all students at Kapolei High School that assist with reading comprehension and provide differentiated instruction. [Id. at 19-20.]

Finally, the DOE argues that Defendants' arguments regarding whether the Private School is an appropriate program for Student are irrelevant, as Student does not qualify for special education and related services under IDEA.  The DOE emphasizes that it did not hold an IEP meeting for Student because it determined that Student did not qualify to receive special education and related services under the IDEA.  [Id. at 21.]

The DOE therefore asks the Court to reverse the Hearings Officer's Decision.

**STANDARD OF REVIEW**

The IDEA provides that "[a]ny party aggrieved by the findings and decision" of the hearing officer "shall have the right to bring a civil action with respect to the complaint presented pursuant to this section, which action may be brought

13

in any State court of competent jurisdiction or in a district court of the United States, without regard to the amount in controversy." 20 U.S.C. § 1415(i)(2)(A).  The party challenging the administrative decision bears the burden of proof when seeking relief from the district court.  <u>L.M. v. Capistrano Unified Sch. Dist.</u>, 556 F.3d 900, 910 (9th Cir. 2009).

The IDEA requires that the court "(i) shall receive the records of the administrative proceedings; (ii) shall hear additional evidence at the request of a party; and (iii) basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate."  20 U.S.C. § 1415(i)(2)(C).  This standard requires that the district court give "'due weight'" to the administrative proceedings.  <u>L.M. v. Capistrano</u>, 556 F.3d at 908 (quoting <u>Bd. of Educ. of the Hendrick Hudson Cent. Sch. Dist. v. Rowley</u>, 458 U.S. 176, 206 (1982)) (some citations omitted).

The district court, however, has the discretion to determine the amount of deference it will accord the administrative ruling.  <u>J.W. ex rel. J.E.W. v. Fresno Unified Sch. Dist.</u>, 626 F.3d 431, 438 (9th Cir. 2010) (citing <u>Gregory K. v. Longview Sch. Dist.</u>, 811 F.2d 1307, 1311 (9th Cir. 1987)).  In reaching that determination, the court should consider the thoroughness of the hearings officer's findings, increasing the degree of deference where those findings are "'thorough and

careful.'" <u>L.M. v. Capistrano</u>, 556 F.3d at 908 (quoting

<u>Capistrano Unified Sch. Dist. v. Wartenberg</u>, 59 F.3d 884, 892

(9th Cir. 1995)).  The district court should give "substantial

weight" to the hearings officer's decision when the decision

"evinces his careful, impartial consideration of all the evidence

and demonstrates his sensitivity to the complexity of the issues

presented." <u>Cnty. of San Diego v. Cal. Special Educ. Hearing</u>

<u>Office</u>, 93 F.3d 1458, 1466-67 (9th Cir. 1996) (citation and

quotation marks omitted).

<b><u>DISCUSSION</u></b>

        As an initial matter, after careful consideration of

the administrative record and the Hearings Officer's Decision,

the Court finds that the July 6, 2012 Decision is not

sufficiently "thorough and careful" to warrant more than minimal

deference.  While the Decision generally references all of the

evidence submitted by the parties, in reaching its conclusions it

glosses over considerable factual testimony that contradicts the

Hearing Officer's findings, and asserts erroneously that the two

observations conducted at the Private School were not conducted

in the "regular classroom setting."  These omissions are

significant and undermine the Court's confidence in the

administrative findings.  The Court therefore determines that

minimal deference to the July 6, 2012 Decision is appropriate.

<u>See</u> <u>Ashland Sch. Dist. v. Parents of Student R. J.</u>, 588 F.3d

15

1004, 1009 (9th Cir. 2009) ("The court is free to determine independently how much weight to give the state hearing officer's determinations." (citations omitted)).

Turning to the merits of the case, the parties dispute whether Student is a "child with disability" under the federal and state definitions such that he is qualified for special education and related services under the IDEA. See 20 U.S.C. § 1412(a)(1)(A). Under the IDEA, the term "child with a disability" means a child: "(i) with . . . specific learning disorder, anxiety disorder, or attention deficit hyperactivity disorder . . .; and (ii) who, by reason thereof, needs special education and related services." 20 U.S.C. § 1401(3)(A)(i)(ii).

In order to qualify under the IDEA, a child must satisfy three criteria: (i) he must suffer from one or more of the categories of impairments delineated in the IDEA, (ii) his impairment must adversely affect his educational performance, and (iii) his impairment must require special education and related services. Wartenberg, 59 F.3d at 889; see also 34 C.F.R. § 300.8(c)(9).

The Hearings Officer found that Student qualified for disability services under the "specific learning disability" category. Hawai`i Administrative Rule § 8-60-39 defines a specific learning disability as:

> a disorder in one or more of the basic
> psychological processes involved in understanding

16

or in using language, spoken or written, that may manifest itself in the imperfect ability to listen, think, speak, read, write, spell, or to do mathematical calculations, including conditions such as perceptual disabilities, brain injury, minimal brain dysfunction, dyslexia, and developmental aphasia.

A student is eligible under the disability category of

SLD if:

(1) (A) The student does not achieve adequately for the student's age or to meet State approved grade-level standards in one or more of the following areas, when provided with learning experiences and instruction appropriate for the student's age or State-approved grade-level standards:

  (i) Oral expression;
  (ii) Listening comprehension;
  (iii)Written comprehension;
  (iv) Basic reading skill (including phonemic awareness, phonics, and/or vocabulary;
  (v) Reading fluency skills
  (vi) Reading comprehension;
  (vii)Mathematics calculation;
  (viii) Mathematics problem solving; or

(B) The student demonstrates a severe discrepancy between actual achievement and intellectual ability by a difference of at least one and one-half standard deviations in one or more of the areas in subparagraph (A); and

(2) (A) The student does not make sufficient progress to meet age or State-approved grade-level standards in one or more or the areas identified in paragraph (1)(A) when using a process based on the student's response to scientific, research-based intervention; or

(B) The student exhibits a pattern of strengths and weaknesses in performance, achievement, or both, relative to age, State-approved grade-level standards, or

17

intellectual development, that is determined by the group to be relevant to the identification of a specific learning disability, using appropriate assessments, consistent with sections 8-60-36 and 8-60-37; and

(3) The group determines that its findings under paragraphs (1)(A) and (2)(A) are not primarily the result of:

      (A)  A visual, hearing, or motor disability
      (B)  Intellectual disability;
      (C)  Emotional disability;
      (D)  Cultural factors;
      (E)  Environmental or economic disadvantage; or
      (F)  Limited English proficiency.

Haw. Admin. R. § 8-60-41.

As such, under Hawaii's regulations, a child will be deemed eligible for special education under the "specific learning disability" classification if he satisfies two sets of criteria.  First, the child must demonstrate either (1) inadequate achievement, or (2) a severe discrepancy between achievement and ability.  Id.  Second, the child must demonstrate either (1) insufficient progress, or (2) a pattern of strengths or weaknesses in performance consistent with a "specific learning disability."  Id.  The DOE disputes the Hearings Officer's determination that Student meets this test.  Specifically, the DOE argues that ample evidence (including Student's test results, his grades, his performance in the classroom, and the testimony of the DOE's expert witnesses) supported the DOE's determination

that Student did not demonstrate inadequate achievement or a
severe discrepancy between achievement and ability.

In concluding that Student is eligible for special
education services under the IDEA, the Hearings Officer found
that "Student has life long disabilities--dyslexia, dysgraphia
and ADHD--that negatively impact his ability to learn," and that
"[t]he reason Student is able to appear that he has no disability
and does not require an accommodations or modifications (sic) is
because the Private School has provided him with an appropriate
program that meets his unique needs." [Decision at 29.]  As
such, the Hearings Officer discounted the DOE's two observations
of Student at the Private School, as well as his grades from the
Private School, stating that they "did not provide the
eligibility team with an accurate representation of Student's
academic performance and behavior in the classroom in his areas
of difficulty." [Id.]  The Court disagrees with these
conclusions.

For purposes of determining whether a student is
eligible for special education and related services, the DOE is
required to "ensure that the student is observed in the student's
learning environment (including the regular classroom setting) to
document the student's academic performance and behavior in the
areas of difficulty." Haw. Admin. R. § 8-60-42.  The Hearings
Officer concluded that the observations of Student in the Private

School, a school exclusively for students with special needs, were not observations occurring in "the regular classroom setting" and, thus, were uninstructive for purposes of determining whether Student has a disability.  [Decision at 25-26.]  Indeed, the Hearings Officer further concluded that "there is no regular classroom setting at the Private School."  [Id. at 25.]  The Court finds no legal support for such conclusions.

The DOE conducted two fifty-minute observations of Student in his regular classroom.  During the first observation, Student was observed working on a class assignment individually on his laptop computer and participating in a class discussion. Student was permitted to use a laptop and allowed to stand up and walk around to facilitate thinking, but no other accommodations were observed.  Student was able to display appropriate work and classroom behavior and perform appropriately both academically and socially.  [ROA, TR. Vol. II, at 231-36.]  During the second observation, Student participated in a class discussion of The Great Gatsby, and his answers to questions indicated that he fully comprehended the passages being discussed.  Student was given additional time to work on a vocabulary worksheet; however, no other modifications or accommodations were observed, and Student's special learning needs were not evident.  [Id. at 237-43.]

The Court disagrees with the Hearings Officer that these observations should not be given weight because Student was observed in his classroom at the Private School.  This was Student's normal classroom setting.  Indeed, because Student's regular teacher was absent during the initial observation, the DOE conducted a second observation to observe Student in his usual classroom setting with his customary teacher.  [Id. at 237.]  The Court can find no support for the proposition that the DOE was somehow required to observe Student in a classroom other than his own regular classroom.[3]

Nor is the Court convinced that Ms. Hui, who conducted the observations, "unintentionally . . . misperceive[d]" what she observed in the classroom because of her "unfamiliarity with Student and/or the Private School."  [Decision at 23-24.] Ms. Hui is an expert in the areas of special education with specializations in mild to moderate learning disabilities and curriculum and instruction.  She conducted the two fifty-minute observations of Student after having made efforts to obtain information from the Private School regarding the school's

---

[3] Indeed, if the Hearings Officer's logic is followed, then "regular classroom setting" would entail taking Student out of his classroom at the Private School, where he has attended for years, and placing him in a classroom at a pubic school, where he has never attended class, for observation or finding that, because of the Private School placement, Student is incapable of being observed in a "regular classroom setting".  Both scenarios do violence to the regulation and are counterproductive in evaluating Student's eligibility.

curriculum and Student's academic, behavioral, and social performance. [ROA, TR. Vol. II, at 201, 214-15.] As such, the Court is unconvinced that Ms. Hui's observations lacked credibility or should be disregarded. The Court thus concludes that the Hearings Officer erred in finding that the two observations could not be relied upon as part of the information considered by the DOE in making its determination as to Student's eligibility under IDEA.

Further, the Court finds that, when properly taking into account Student's performance during the two observations, as well as Student's grades from the Private School, in addition to the other evidence and testimony in the record, the DOE correctly concluded that Student did not meet the eligibility criteria for special education services under the category of SLD. The record reflects that Student showed no significant discrepancy between cognition and academic achievement on his assessments, [ROA, TR. Vol. II, at 352-67,] he got good grades, [id. at 220,] he performed well in the classroom, [id. at 231-43,] and the information provided by the Private School indicated that he was receiving "tier one" accommodations, or those accommodations that may be provided to all students, both general education and special education, [id. at 278-80]. The evidence therefore supported the DOE's determination that Student did not

meet the criteria for a finding of disability under the category of SLD.  <u>See</u> Haw. Admin. R. § 8-60-41.

As such, the Court FINDS that the DOE has satisfied its burden of proof to show that Student did not meet the criteria for eligibility for special education and related services under IDEA.

<b><u>CONCLUSION</u></b>

On the basis of the foregoing, the Hearings Officer's July 6, 2012 Findings of Fact, Conclusions of Law and Decision is HEREBY REVERSED.

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAII, May 20, 2013.



 /s/ Leslie E. Kobayashi
Leslie E. Kobayashi
United States District Judge

<b><u>DEPARTMENT OF EDUCATION, STATE OF HAWAII V. PATRICK P., ETC., ET AL</u>; CIVIL NO. 12-00438 LEK-BMK; ORDER REVERSING THE HEARINGS OFFICER'S JULY 6, 2012 DECISION</b>